22-2343, Southern Iowa, United States v. Richard Brown, Jr. Mr. LaBrie, we also appreciate your willingness to accept the appointment. Thank you for the opportunity. Glad to do it. May it please the court. Mr. Brown challenges the conviction by jury, two-day jury trial, for possession with intent to distribute cocaine base. At trial, a number of witnesses testified, including law enforcement, who executed a search warrant at the premises where Mr. Brown was located. The premises were not Mr. Brown's. Mr. Brown was not a resident of those premises. And the room in which Mr. Brown stayed was not his room. In fact, it was someone else's, Lisa Harper's. The reason that's important is a fact witness, the only fact witness, the only non-law enforcement fact witness who testified at Mr. Brown's trial, Ms. Welsh, testified that she had arrived 30 minutes prior to the execution of the search warrant where she alleged the homeowner or the renter, Ms. Harper, was present, opened the door, welcomed her in, and facilitated a drug transaction between Ms. Welsh and my client, Mr. Brown. Ms. Welsh did not testify truthfully. And we know that from a number of factors. And I think the timeline for that testimony starts seven months prior in a trial of an associate, Mr. Kenny Smart. This circuit has actually issued an opinion in that case. I think it was submitted back in February. But at that trial, Ms. Welsh testified she did not deal with Mr. Brown that day. That is, she did not deal with my client. Well, in Mr. Brown's case, she said she did buy crack cocaine from my client on that day. At the beginning of the second day of trial, moving forward now, the beginning of the second day of trial, the government anticipated some impeachment materials would be brought in advance of Ms. Welsh's testimony. And the government's perception was likely correct, that there was something to impeach Ms. Welsh about with her testimony, specifically the presence of Ms. Harper in the home. At trial, Special Agent West testified Harper was not present. The government's briefing in Smart's case indicated Ms. Harper was not present that morning of the raid. And the government's briefing here concedes the same. Now, Mr. Brown readily embraces that two of his claimed air challenges here on appeal, specifically Miranda and Nip Pugh, the uncorrected false testimony of a prosecution case in chief witness, are not preserved. Her trial counsel did not preserve those. And that kind of undergirds his ineffective assistance claim at the end. As to the failure to preserve this issue, Mr. Brown also submitted a motion to expand the record. That's fully briefed. I don't plan to spend a ton of time on that today. However, I think it's important because of the recent case law, Davis. Davis prevents an appellate court from declining to review any error, whether it's legal or factual, for plain error. Unpreserved errors receive plain error review. Accordingly, it's Mr. Brown's position that this court ought to undertake a review of some of those discovery materials produced by the government as to specifically the Nip Pugh violation. And as to the, is it Welch, is that her name? Correct. The witness who testified to, as I understand it, to purchasing drugs from that home from Brown via Lisa Harper? Correct. What was the testimony at trial? As I understood it, the agent said that Lisa Harper wasn't there at the time of the search. Aren't those two different points in time? I realize I think that the assertion it's the same morning, but that the search took place later and that that officer wouldn't really have any information about whether Harper was there earlier in the morning? It's a good question, Your Honor. And you are correct that there is a 30-minute gap between when Ms. Welch alleged she was present at the house and when the execution of the search warrant began. That 30-minute gap is the reason Mr. Brown submits that poll camera footage. That poll camera footage, which was submitted contemporaneous with the motion to expand the record, was also underlying Government Exhibit 20 at trial. So the government acknowledged that this was the poll camera, that it was the same angle of the poll camera. Why that matters is you don't see anyone coming or going. And so the officers who testified didn't find Ms. Harper at the premises when they executed the search warrant. The reports of investigation say the same. Harper's grand jury testimony says the same. She was located at the casino at the time of the raid. But that's still the time of the raid, right? Is there, well, now we're getting outside of the record that we have. Sure. Because she didn't testify at trial, Harper. Correct. And that's part of Mr. Brown's challenge, that with that information, that was something that the government had the obligation to come forward with because Ms. Welch's testimony was not truthful. Counsel, with regard to the reliance at trial on the pre-Miranda statements of Mr. Brown, in light of the other evidence, can you address how that was prejudicial? Certainly, Your Honor. I appreciate the question. The un-Miranda statements Mr. Brown challenges on appeal relate to acknowledgement of personal property in the room in which the crack cocaine was found, bedroom number three. That's important because I think it dovetails with the jury instruction issue, which was preserved for this court. Under our case law, the defendant is entitled to a defense or a theory of defense instruction when the evidence supports that. Here, the evidence did support that. In response to the motion for judgment of acquittal, the government specifically said, viewing the evidence in light most favorable to the government, there is, of course, the proximity of the crack. The un-Miranda statements, putting the crack cocaine and the personal property that Mr. Brown conceded was his in this un-Miranda custodial interrogation, requires the need for a jury instruction on mere presence. The mere presence theory has been pretty laid out in the trial testimony. The government resisted the motion for judgment of acquittal based on this theory. The court relied on that. In fact, the court said specifically the known possession is further supported by the proximity of the personal effects. Mr. Labrie, I appreciate your tying that to the instructions, but I think Judge Grass' question was more focused on what the prejudice was by using the Mirandized, the pre-Mirandized statement. And if I recall right, the significance was the proximity of the drugs to his phone, correct? Correct. And I think the point of the question was, wasn't there plenty of other evidence that the phone was his, and therefore the pre-Mirandized statement wasn't very significant? There may be other evidence to support that, such as the text messages and the photographs on the phone. Mr. Brown readily acknowledges that. However, when coupled together with all of the other alleged violations, the jury instruction seems to be the most prevalent issue with respect to Miranda. Okay. So flipping then to the jury instructions, don't the instructions that were given, while they might not have used the language you would have preferred of mere presence isn't enough to convict, don't they require more than mere presence to convict? I don't know that they do. And I think the important piece is, in a lot of the case law that the government has provided, what was critical was, according to the courts who have opined on this, is the fact that possession has to be knowing. Possession has to be knowing. That doesn't do enough. That argument proves too much, because knowing doesn't exist in a vacuum. It's not some free-floating concept. It has to be tied to something. In the False Claims Act, it's knowingly submitting false claims to the government. In possession with intent to distribute, it's knowingly possessing. But if possession is misperceived, whether rightly or wrongly, then that knowing element is changed as well. So if, for example, mere presence under this conception of possession is sufficient, maybe the jury thinks mere presence is enough to convict. Well, now it's knowingly present. You are knowingly associated with this. And so the knowingly doesn't quite do it, because possession is still tainted, and knowing is necessarily tied to the possession. As to the intent piece, the government's evidence on both knowledge and intent was the same. So I'm not sure that they do bring together enough to establish that more than mere presence was necessary, because knowing and intent is necessarily tied to what the jury views as a requisite possession element. Which briefly brings us to 404B. I'll reserve some time for rebuttal, but the intent and knowledge elements that go to the jury instruction are also relevant to our 404B discussion. But those were never elucidated at trial, before trial, or otherwise. There's no explanation for why his prior convictions would demonstrate intent or motive beyond mere propensity. That's further highlighted by the numerous references. I think I counted eight of drug dealer, calling Mr. Brown a drug dealer, specifically because of his prior convictions. And that's what the Green-Bowman case, and that's what a bunch of out-of-circuit cases cited in the briefing suggests is inappropriate. Unless there's further questions, I'll yield for rebuttal. Very well. Thank you. May it please the Court. Mackenzie Tubbs on behalf of the United States, and I tried this case. I would like to first correct the record. A couple of the facts that Mr. Labrie mentioned this morning are inconsistent with the factual record. Lamita Welch testified that she, in fact, had gone into the home and purchased the drugs through Lisa Harper, and that she heard Mr. Brown's voice and knew him to stay in that bedroom. That both is contrary to the assertion that he was not, in fact, a resident, albeit a brief resident. She had known him to stay in that room. In addition, at trial, the government did present evidence from Mr. Brown's phone that showed him in the home, in the bathroom nearest to that bedroom, within the month leading up to the search warrant. The government urges, certainly, the Court to look specifically at what Lamita Welch said. It was not false or inconsistent with the other evidence presented at trial. Harper could have been present, of course, when Ms. Welch was there to purchase crack cocaine. She recalled it being approximately a half hour before, and the poll camera video, which is grainy, does not show her leaving that residence, but that is one fixed view of that residence. And that evidence was presented to the jury. When you say that's one fixed view, what do you mean by that? That was one view of the front exit of the house. And so there's another exit, or is there another angle that might show something else? I am hesitant, of course, to go outside the record. I understand that. But it's so hard to talk about this. It is. But I appreciate that. The poll camera is one view of the home, and there was only one view from that poll camera. There are not other video views available. I will say that. And this evidence was the evidence considered by the jury. They considered Ms. Welch's testimony. Did you say the poll camera got into the view, got into evidence, or it did not? It did not. Was it available to the defense? It was, yes, Your Honor. It was available to the defense. There was one screenshot from the poll camera video that was entered into evidence of Mr. Brown. So was there cross-examination about that, of Ms. Welch? I guess it would be tricky to talk about the poll camera that wasn't in evidence. Yes. And there was some cross-examination about, of course, Ms. Welch's recollection of the timing of her arrival. My recollection is who she arrived with. But, of course, the focus was on her interactions with Mr. Brown that day because that was what was relevant here. Was her testimony consistent between—she testified in Kenny Smart's trial as well, right? She did. In your view, was her testimony consistent between those two trials? It was entirely consistent, Your Honor. And, of course, at Richard Brown's trial, she testified about her interactions with Richard Brown. And at Kenny Smart's trial, she testified about her observations of Kenny Smart. And Kenny Smart was located in an entirely different bedroom on a different side of the house. And she did mention that at this trial. Of course, that was relevant to what the government perceived as one of Mr. Brown's main defenses was that Kenny Smart did all of this. And so she testified seeing Mr. Smart in a back bedroom and then purchasing the drugs through Ms. Harper. And she testified specifically that she went into the house and she spoke to Lisa, that she first asked for Mr. Smart, and that she got $60, and she called it from the defendant. And she discussed, specifically both on direct and cross-examination, that Lisa was the one who went into Mr. Brown's bedroom and then came out with the drugs, and that she recognized his voice and heard Lisa say his name. And that was consistent with her testimony at Kenny Smart's trial. Counsel, with regard to the pre-Mirandized statements of Mr. Brown, my reading of the record is that there was significant reliance on those statements at trial. Given that there is other evidence of some of the same information from other sources, but the fact that his statements were used repeatedly, doesn't that indicate that they were more powerful and more influential and therefore prejudicial to Mr. Brown? I disagree, Your Honor. The government certainly highlighted in its case in chief that this cell phone did belong to Mr. Brown. And it did that in a number of ways, not only by his own statements, but most powerfully by the evidence that was located on the phone. The government had an entire exhibit of the multiple text message where he identifies himself by the nickname Junior, where he is identified as Mr. Brown, and where, as I discussed earlier, that photo of him in the exact home where he was located during the search warrant was found. And so I do believe that it was powerful evidence to the jury that this was Mr. Brown's phone, but his own statement claiming the phone was only one piece of that. It was repeatedly used at trial? It was, it was, Your Honor. So if it wasn't more powerful, why wasn't the other evidence referenced instead? I believe the other evidence was referenced primarily. However, it was referenced that he did make these statements to the officer claiming the phone. They were his own words. And here, what's important to keep in mind, of course, is that plenary review does apply. And based on the evidence in this record, we can hardly say that there was an error or that it was plain, but certainly if we move on. Would you agree, first of all, that he was in custody when he made the statements? I would not, Your Honor, and I do not believe that the evidence here is sufficient to make such a finding, even on the expanded record, which is just, by my count, about 10 pages of a portion of the transcript. I did have one question about that. I believe the testimony is that he was told he would be released after the search was completed. Is that correct? That is correct. So doesn't that mean he's not presently free to leave, if he would be free to go later? I don't, I really hesitate to expand the record anymore, but the testimony on direct was that he would be free, or excuse me, on cross-examination, yes, was that a statement was made to Mr. Brown that he would be free to leave. Wouldn't that imply he's not currently free to leave? I would disagree, and certainly some of the other factors about how that questioning occurred and then some subsequent questioning that occurred, I think, require further development to make any sort of custody determination here. Is the reason why the record's so weak is that he never moved to suppress? That is correct, Your Honor. There was no motion to suppress here. And, of course, the case law here talks about the many, many factors that we must consider, both for custody and interrogation, and we simply don't have that full development here. The brevity, which with the government did talk about those statements that he made, was to simply introduce the statements and to move on. On cross-examination is when some of the questions about wasn't he once told he would be free to leave, that's when those facts did come into the record. I'd like to talk about the jury instructions issue next. I believe here that the case law is firmly on the government's side. There are many cases that analyze factors similar to those in Mr. Brown's case. He was the sole occupant of that bedroom, and the crack cocaine was found next to items that were his, his cell phone. Wasn't it in dispute? Didn't he counter whether he had the sole, I guess, authority over that room? In other words, were there some factors? And I understand you're presenting perhaps the facts and the like most favorable to the verdict, but for purposes of a jury instruction, it seems to me that, while knowledge is always a part of this particular offense that's been charged, and you've got to prove it, so that can't be it alone, or else we'd never have a mere presence instruction. And I think the case law ferrets out, Your Honor. There are instances where an individual is found in proximity to contraband, and it is found that a mere presence instruction is appropriate. And one of those cases is Manning. There were three individuals present in a vehicle. There was conflicting testimony about who was sitting where, and law enforcement found a gun outside the passenger's side window. And in that case, that mere proximity, the court found an instruction was warranted, whereas in Mr. Brown's case, we have him as an occupancy versus residency was certainly in dispute. But it was not disputed that Mr. Brown was the only individual who was found in that area of the home. And there was no evidence to suggest, for example, that Kenny Smart was on that side of the house. Kenny Smart was found in a completely different part of the house. There wasn't an allegation that the hat belonged to someone else, the jacket belonged to someone else, the phone belonged to someone else. And this is really very similar to Cornelison. And defense counsel distinguishes Cantrell because they make an admission about some of the items found in the home. Cornelison makes the same conclusion that a mere presence instruction is not warranted, and there were no admissions in that case. And Drew, while Drew is an actual possession case, the jury heard evidence that the defendant held the gun in that case, and there was DNA evidence, it is also instructive. And the model instructions here, when we take together the definition of possession, I believe that that was omitted from defense counsel's argument. The jury was very clearly instructed on the types of possession here. And when you consider that with what the government had to prove in this case, that Mr. Brown knew that he possessed a controlled substance and intended to distribute it, those definitions in the jury instructions certainly require more than mere presence. I will touch briefly on the point that the assertion that the government's evidence as to knowledge and intent was the same. It was, in fact, different. Of course, someone who has knowledge that what they possess is a controlled substance, the government proved that here in several ways. And the intent that the way that these particular drugs were packaged, they were packaged in multiple bags, several of them were expressly distribution quantities, and they were sorted out between different drugs. And that is important here because that intent and the intent to distribute what was found was expressed by the facts contained that the government presented. Briefly, I will touch on the 404B issue first. Let me go ahead and ask you about that then. Yes. So what was the non-propensity reason for the admission of that evidence? And don't just recite the words to me. Tell me specifically how it applies under these facts. So as I was just discussing, the drugs in this case were found in multiple bags separated by the type of drug. And so here that was important because Mr. Brown was likely to say, I didn't know that these were drugs. He could say that first. Or that they were personal use quantities and I intended to distribute it. And the government's fore-entry of simply the judgments, which were redacted to not include the sentence imposed, that was in order to show that Mr. Brown in fact did know what cocaine and crack cocaine were, and that was evidenced in what was found in those bags.  And that's important here and very similar to his prior convictions and a proper use of that. He also, during trial, it was also disclosed that those drugs were exceptionally valuable. And so the fact that Mr. Brown had previously been convicted of possession of a controlled substance with intent to deliver, demonstrates that he understood the value of those drugs and why you would want to keep them in close proximity to oneself. How would that, did the value of the drugs, if you just have the prior conviction to the jury, what does that tell them about the value of the drugs? I believe, Your Honor, that it demonstrates the importance of keeping those in close proximity to himself when he was sleeping in a home. He kept that with his phone, with his other items. And so that was a specific move in order to say, these drugs are valuable and I am going to keep them near me. I see my time has expired. Thank you. Thank you, Ms. Tubbs. Mr. Labrie, your rebuttal. Thank you. I'll try to be quick and tick off a few items here. One of the first questions I heard asked was, was Ms. Welsh effectively cross-examined? Mr. Brown submits she was not, and that leads to his ineffective assistance claim. Another question I heard was, why wasn't other evidence referenced to exist? Was Mr. Brown free to leave when he was being interrogated by a special agent at West? And the answer that I didn't hear is, there was evidence in the record to indicate that. I believe it was Special Agent West himself who testified that the defendant was secured with handcuffs. It's also in the Miranda transcript as well. Further, the Miranda issue wasn't just fleeting, it was an opening. It was throughout the testimony and it was in closing. The government relied heavily on the fact that Mr. Brown admitted this was his phone. And they did that because this was a constructive possession case. Constructive possession propped up by mere presence. Moving on to the instruction. I think the problem I have with your Miranda argument is that, and you were not trial counsel, were you? Correct. Correct. I was appointed for appeal. That there was no motion to suppress and therefore the full record of whether he was in custody or not wasn't really developed. I know there was some during cross-examination. But as I understand it, and correct me if I'm wrong, but if you don't make the motion, absent some good cause, the issue is waived. I respect that. Do you have good cause? Is there good cause in this case? Mr. Brown submits the ineffective assistance claim as good cause. His trial counsel is an effectiveness. Further, I think the Davis Supreme Court per curiam one-page opinion opens up a new route that I don't think I have seen a court of appeals address before, how to handle arguments such as these in a post-Davis environment. I think the correct way to do it would probably be if these facts are established, this would constitute plain error.  If we don't meet step one, I respect that the court would consider the issue waived or forfeited, depending on the circumstances. I respect all that. I think if the facts, as alleged, would constitute plain error, then this court can either take a look at it or remand for a specific fact finding by the district court. I think those are both within this court's authority. Back on the instruction piece, there is case law, and the government is quick to point it out, manning. Manning says mere presence instruction is required. In fact, it was a very similar instruction to the one given by the district court here. The problem is there is other case law that says no mere presence is required. Drew, Franklin come to mind. But we can't reflexively defer to these prior cases because they're just applications of the rule. It's the same reason we wait to finalize jury instructions until after the close of evidence. It's because the evidence actually presented matters for the jury instruction. And here, Franklin, Drew, they don't address the facts as here. They don't address that the government relied on proximity in opening, relied on proximity in resisting the motion for judgment of acquittal, relied on proximity in closing, and in all the briefings subsequent. And so Mr. Brown's position isn't that the definition of possession, as instructed by the court, is wrong. It's just incomplete. Finally, in my last 30 seconds on 404B, today we heard more explanation from the government as to what the purpose of the prior convictions was more than ever before. It's still not enough. It was the very first thing the jury heard was Mr. Brown's a drug dealer. The very last thing the jury heard, Mr. Brown's a drug dealer. In closing, the government said the defendant intended to sell this crack to make money because the defendant is a crack dealer. That's propensity. Thank you, Your Honors. Thank you. Thank you for your appearance and argument. Case is submitted and we will issue an opinion in due course.